AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| 𝐔𝐧𝐢𝐭𝐞𝐝 𝐒𝐭𝐚𝐭𝐞𝐬 𝐃𝐢𝐬𝐭𝐫𝐢𝐜𝐭 𝐂𝐨𝐮𝐫𝐭 | District U.S. DISTRICT COURT FOR MASSACHUSETTS | |
|---|---|---|
| Name of Movant          Sanchez Rafael | Prisoner No. 16974-038 | Case No. CR-88-246-MD |
| Place of Confinement          Fort Dix N.J. | | |

| UNITED STATES OF AMERICA | V. | Sanchez Rafael (name under which convicted) |
|---|---|---|

## MOTION

1. Name and location of court which entered the judgment of conviction under attack <u>U.S. DISTRICT COURT FOR</u> <u>MASSACHUSETTS</u>

2. Date of judgment of conviction <u>2/2/89</u>

3. Length of sentence <u>360</u>

4. Nature of offense involved (all counts) <u>Conspiracy and possession w/intent to</u> <u>distribute in violation 28 U.S.C. 846</u>

5. What was your plea? (Check one)
   (a) Not guilty          ☒
   (b) Guilty          ☐
   (c) Nolo contendere          ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury          ☒
   (b) Judge only          ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

   (a) Name of court  U.S. Court of Appeals for the First Circuit

   (b) Result  Conviction Affirm

   (c) Date of result  10/24/1990

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court  U.S. DISTRICT COURT FOR MASS (BOSTON)

      (2) Nature of proceeding  MOTION TO VACATE SENTENCE (2255)

      (3) Grounds raised  Prosecutor used perjured testimony and denied me Brady material, ineffective assistance of counsel

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
      Yes ☒ No ☐

      (5) Result  Dismissed

      (6) Date of result  9-14-1993

   (b) As to any second petition, application or motion give the same information:

      (1) Name of court  N/A

      (2) Nature of proceeding  N/A

      (3) Grounds raised  N/A

AO 243 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
   Yes ☐ No ☒

(5) Result_____ **N/A**_____

(6) Date of result _____ **N/A**_____

• (c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
   (1) First petition, etc.       Yes ☐ No ☒
   (2) Second petition, etc.    Yes ☐ No ☒

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ **N/A**_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

   For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
   Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.
   (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
   (b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

    (c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
    (d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
    (e)  Conviction obtained by a violation of the privilege against self-incrimination.
    (f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable
        to the defendant.
    (g)  Conviction obtained by a violation of the protection against double jeopardy.
    (h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
    (i)  Denial of effective assistance of counsel.
    (j)  Denial of right of appeal.

      A.  Ground one:  Petitioner's "substantial rights" were violated when the trial court sentenced Petitioner under the mandatory Guidelines; thus it was plain error, and Petitioner should be re-sentenced under the advisory Guidelines of U.S. v. Booker

        Supporting FACTS (state *briefly* without citing cases or law) _____

                SEE MEMORANDUM OF LAW ATTACHED HERETO

    B.  Ground two: _____

        Supporting FACTS (state *briefly* without citing cases or law): _____

    C.  Ground three: _____

        Supporting FACTS (state *briefly* without citing cases or law): _____

AO 243 (Rev. 5/85)

_____

_____

D.  Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so
    presented, and give your reasons for not presenting them: _____

_____ N/A _____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked
    herein:

    (a) At preliminary hearing Richard Shalhoub, 150 Charles Street, Boston, MA 02114

    _____

    (b) At arraignment and plea _____

    _____

    (c) At trial _____ /Barry Haight, Venice Florida _____

    _____

    (d) At sentencing _ John McBride, 240 Commercial Street, Boston, MA 02109

    _____

(6)

AO 243 (Rev. 5/85)

(e) On appeal John McBride, 240 Commercial Street, Boston, MA 02109

(f) In any post-conviction proceeding  Sameul, Bernstein, Miami Florida

(g) On appeal from any adverse ruling in a post-conviction proceeding  Cheryl Strumen

P. O. Box 210, Westtown, PA  - 408 Ring Road, Chaddsford, PA 19317

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

(b) Give date and length of the above sentence: _____

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐    N/A

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

___5-29-2005___
(date)

_Sanchy Rafael_
Signature of Movant

(7)

<u>GROUNDS AND SUPPORTING FACTS IN</u>
<u>SUPPORT OF MOTION TO VACATE</u>
<u>SENTENCE PURSUANT TO 28 U.S.C. 2255</u>

In <u>**United States v. Booker,**</u> 544 U.S. ____, 1255 S.Ct. 738 (2005), the Supreme Court issued two opinions, one authorized by Justice Stevens concerning the merits of the constitutional challenge, and the other authorized by Justice Breyer addressing the necessary remedy for what the Court found to be a constitutional violation.

In Justice Breyer's opinion, the court expressly severed and excised 18 U.S.C. 3553(b)(1), which had required sentencing courts to impose a sentence within the applicable Sentencing Guideline range, subject to departures in certain limited cases. <u>**Booker,**</u> U.S. at ____ **125 S.Ct. at 765.** Thus under <u>**Booker,**</u> the Sentencing Guidelines are now advisory in all cases, including those that do not involve a Sixth Amendment violation. <u>**Id. at 769.**</u>

The <u>**Booker**</u> court made it clear that the remedial scheme should apply not only to those defendants whose sentences had been imposed in violation of the Sixth Amendment, but also to those defendants who had been sentenced under the mandatory Guidelines without a Sixth Amendment violation. <u>**Id. at 765.**</u> We should note that while the defendant <u>**Fan Fan's**</u> sentence had not been imposed in violation of the Sixth Amendment, the parties, nevertheless, could seek re-sentence under the new regime.

In the case at bar, Petitioner now seeks to be re-sentenced because his sentence was imposed under the pre-<u>**Booker**</u> regime, when the

Sentencing Guidelines were mandatory. Now that **Booker** has made the Guidelines advisory, Petitioner would submit, that he should be re-sentenced under the post-**Booker** advisory Guidelines. Moreover, when the sentencing judge imposed Petitioner's sentence, the court did not have any discretion with respect to the sentence it was to have imposed on Petitioner.

Although Petitioner did not challenge his sentence on a violation of his Sixth Amendment right to trial by jury, in the trial court, that would not preclude this court from re-sentencing Petitioner under the post-**Booker** advisory Sentencing Guidelines. The **Booker** court stated that whether a new sentencing hearing is required depends on ordinary "prudential doctrines" such as whether the issue was raised below and whether it fails the plain-error test. **Booker, 544 U.S. _____, 125 S.Ct. at 769.**

In the case at bar, the court imposed a period of imprisonment of 360 months, and a period of supervised release of 60 months, and a special assessment of $100.00 and a $20,000 fine. The sentencing procedure used by the court in 18 U.S.C. 3553(b)(1), was correct at the time the sentence was imposed herein.

Now that section 3553(b)(1) has been excised and severed under **Booker,** the sentencing court erred by treating the Guidelines as Mandatory when it sentenced Petitioner.

Thus, the first requirement for finding plain error is satisfied in this case. **Johnson v. United States,** 520 U.S. 461 (1997); **United States v. Olano,** 507 U.S. 725 (1993).

The next issue is whether the issue was plain-error. In this

2

context, plain-error is synonymous with clear or equivalently obvious.
**Olano, 507 U.S. at 733-34.**

The Supreme Court has expressly held that where the law at the time of trial was settled and clearly contrary to the law at the time of appeal, it is enough that an error be plain at the time of appellate consideration **Johnson, 520 U.S. at 468.**

Thus, in the case at bar, at the time Petitioner was sentenced, the Guidelines were mandatory, and were not advisory as they are now.

Furthermore, the controlling case law pre-**Booker** consistently held that the Sentencing Guidelines were constitutional and mandatory even after the Supreme Court's decision in **Booker** was enunciated.

Hence, **Booker**, however, effectuated a clear and obvious change in the law by making the Sentencing Guidelines advisory. Given this change in the law, it was, therefore, plain-error for Petitioner to have been sentenced under a mandatory Guidelines regime that has now become advisory.

Pursuant to **Fed. R. Crim. P. 52(b),** the defendant is required to demonstrate that the plain-error affected "substantial rights". **Olano, 507 U.S. at 734; United States v. Cotton, 535 U.S. 625, 632 (2002).** The phrase "affected substantial rights" is generally synonymous with prejudicial, which usually means that the error must have affected the outcome of the District court's proceedings. **Olano, 507 U.S. at 743.**

There are, however, two exceptions to the requirement that the defendant demonstrate that the error affected the outcome of the District Court's proceedings.

First, there is a class of so-called structural errors, which

the Supreme Court has instructed  can be corrected regardless as to their affect on the outcome. **Olano, 507 U.S. at 735.** "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial itself." **Johnson, 502 U.S. at 468; Arizona v. Fulminonte, 499 U.S. 297, 311 (1991).**

The Supreme Court has found structural errors in a very limited class of cases, such as where a defendant is denied certain fundamental rights. The right to self-representation at trial, **McKaskle v. Wiggins,** 465 U.S. 168 (1984). The right to a public trial, **Walker v. Georgia,** 467 U.S. 39 (1984). The right to counsel, **Gideon v. Wainwright,** 372 U.S. 355 (1963).

In these cases, because the error was structural, the defendant was not required to demonstrate that he was prejudiced. In other words, the error had effected the outcome of the District Court's proceedings.

In the case at bar, the errors committed by the sentencing court herein were structural errors, and the errors affected the outcome of sentencing court's proceedings. Hence, Petitioner need not demonstrate that he was prejudiced by the sentencing court's errors.

Accordingly, the Supreme Court's decision in **Olano**, has made it quite clear that in some situations a presumption of prejudice is appropriate if the defendant cannot make a specific showing of prejudice. **Olano, 507 U.S. at 743.**

Thus the Supreme Court has stopped short of establishing a blanket rule that shifts the burden of persuasion on the defendant in all cases. Moreover, there may also be errors that should be presumed

4

prejudicial if the defendant cannot make a specific showing of predjudice. **Olano, 507 U.S. at 735.** Courts have presumed prejudice, and have thus found the third prong of the plain error analysis satisfied in those cases where the inherent nature of the error made it exceptionally difficult for the defendant to demonstrate that the sentencing court would have been different had the error had not occurred.

The case at bar is an appropriate case in which to presume prejudice under the Supreme Court's decision in **Olano.** For if the sentencing court, in the case at bar, had not been bound by the range prescribed by the mandatory Sentencing Guidelines, Petitioner may have received a lower sentence. Thus, it is uncontested that Petitioner's sentencing judge would have had discretion under the new advisory Sentencing Guidelines regime to have imposed a sentence of **12 to 15** years, which would have been significantly lower than the **30** years Petitioner received under the application of the mandatory Guidelines.

In the case at bar, the sentencing judge said that he "had not been left with a lot of discretion" (See, Sen. Trans. Page 41 attached hereto).

In the case at bar, the sentencing judge also stated that he felt obligated to impose the sentences at the lowest end of the guideline range. The court indicated that it was being done because Petitioner "was not the most severe of career offender cases the court can confront"; "nor do I view the defendants as the most significant of career defendants". (See, Sen. Trans. Page 42 attached hereto). The sentencing court also said of Petitioner's sentence of 360 months:

5

"It is a severe sentence. There's no question about that."
But I have no basis to depart from the guidelines that have
been outlined by congress".

(Sen. Trans. Page 40 attached hereto) (Emphasis added).

In the case at bar, the sentencing judge stated that the sentences imposed on the defendant and his brother were mandated and required by the mandatory Sentencing Guidelines that had been enacted by congress. The sentencing judge also indicated that the court did not have any discretion with respect to the sentences the court was required to impose herein. It should be noted that this motion is being presented for Petitioner Rafael Sanchez only, and not for Petitioner's brother Edwin Sanchez, who is Petitioner's codefendant in the case herein. This court is already aware that this court sentenced both Petitioner and his brother at the same time. But Petitioner wanted to make it clear that the motion herein is for Petitioner Rafael Sanchez only.

In the case at bar, the sentencing judge stated that the 360 month sentence was severe. It would then seem to indicate that had the judge had any discretion, and that if section 3553(b)(1), which made the guidelines madatory, was not binding, that the sentence judge may have imposed a lower sentence on Petitioner. Also, the sentencing judge did not view Petitioner as a severe career offender of the most significant category. Nor did the sentencing court consider Petitioner to be one of the worst career offenders that had ever been before that court. For the court had confronted career offenders more severe than Petitioner, seemingly.

Now, taking all the sentencing court's remarks into consideration

6

that the sentencing court had made as regarding Petitioner's sentence being severe, and that Petitioner was not a significant career defendant, it would then be fair to assume that had the Guidelines been advisory then as they are now, the judge would have, quite possibly, given Petitioner a much lower sentence than 360 months. The trial judge imposed the minimum guideline sentence available on Petitioner. (See, Sen. Trans. Page 40 attached hereto). The trial judge was without any discretion when it imposed the sentence herein because the Sentencing Guidelines were mandatory.

Now, that **Booker** has rendered the Sentencing Guidelines advisory, and **Booker** has excised and severed section 3553(b)(1), this court now has the authority to resentence Petitioner to the sentence that this court has discretion to impose.

The plain error in the case at bar, is that the sentencing court failed to treat the Sentencing Guidelines as adviosry in determining Petitioner's sentence. The record herein shows that the sentencing court imposed a sentence based on the assumption-which, again, was correct at the time Petitioner was sentenced, but is incorrect in the light of **Booker** - that the Sentencing Guidelines were mandatory.

Accordingly, it would be exceedingly difficult for Petitioner to now show that the sentence would have been different had the court sentenced him under the mandatory Guidelines framework.

This is true in part because of the fundamental alteration of the sentencing process brought about by **Booker's** remedial holding. Thus,

7

under the post-**Booker** framework, the sentencing court is now empowered with great discretion to consider factors provided in 3553(a) in determining a proper sentence. This discretion was not present when Petitioner was sentenced under the Mandatory Guidelines. Now, under the post-**Booker** framework, counsel are now able to present aggravating and mitigating circumstances that existed at the time as pre-**Booker** sentencing but were not available for consideration under the mandatory Guideline regime. **United States v. Crobsy,** 397 F.3d 103 (2 Cir. 2005).

Because Petitioner was sentenced under the Sentencing Guidelines as if they were mandatory, rather than advisory; Petitioner has shown that the sentencing court might have exercised its discretion to impose a lower sentence had it known that the Guidelines were advisory; Petitioner has thus shown that his substantial rights were violated.

Moreover, because the sentencing judge chose to sentence Petitioner at the lowest end of the mandatory Guideline range, does not necessarily suggest that the court would not have sentenced Petitioner to a lower sentence if the court had had the same discretion under the pre-**Booker** Guidelines that it now has under the post-**Booker** advisory Guideline regime.

Hence, the extraordinary difficulty Petitioner is now facing is to show that the use of the mandatory, rather than advisory Guideline affected the outcome of the proceeding. This is exacerbated by the fact of having to make a showing that Petitioner would presumably have demonstrated that the sentencing court intimated that it felt constrained by the mandatory Sentencing Guideline. Or that the sentencing court

8

would have preferred to have sentenced Petitioner to a much lower sentence than that required by the mandatory Guidelines.

Petitioner has met this burden and requirement by indicating what the sentencing court remarked as regards Petitioner and the severe sentence the court had to impose under the mandatory Guidelines. See Petitioner's exhibits attached hereto.

This, we submit, would be an onerous burden to impose on Petitioner, given the fact that sentencing courts in the pre-**Booker** era, have been repeatedly instructed to impose a sentence within the applicable mandatory Guidelines range, with limited exceptions. They have also upheld the constitutionality of the Guidelines and their mandatory nature, even after the Supreme Court's decision in the **Blakley** case rendered on 24 June 2005.

Thus, this well-established case law substantially undermined any need or incentive for sentencing courts pre-**Booker** to note their objections and reservations in sentencing defendants under the then mandatory Guidelines. It, then, would be improper and unfair for this court to require Petitioner to produce this type of evidence-that sentencing courts had no reason to provide under pre-**Booker** case law-in order to establish that his substantial rights were violated.

Accordingly, in the case at bar, the exercise of discretion is appropriate, because Petitioner's sentence was imposed under a framework that has now been substantially altered by **Booker's** severing and excising of 18 U.S.C. 3553(b)(1), the provision that made the Guidelines mandatory.

Furthermore, it would be, therefore, fundamentally unfair to allow Petitioner's sentence to stand, that was imposed under a mandatory

9

Guidelines regime in light of the substantial development in, and the alterations of, the applicable legal framework.

The better course of action, then, would be for this court to re-sentence Petitioner. The fact remains that a sentence has yet to be imposed under a regime in which the Guidelines are treated as advisory.

Hence, for this court to leave Petitioner's current sentence of 360 months (30 years) standing simply because it may have fallen within the range of reasonableness, unquestionably impugns the fairness, integrity and public reputation of judicial proceedings, and the administration of justice. **United States v. Atkinson,** 297 U.S. 157 (1936).

This court has never been called upon by Petitioner to impose a sentence in the exercise of discretion this court now has under the post-**Booker** Guideline regime.

**Assuming Arguendo,** that Petitioner's current sentence of 360 months (30 years) might have been reasonable since it was imposed under the pre-**Booker** mandatory Guideline regime, would not make it reasonable under the advisory Guidelines.

Moreover, this court has now been vested with discretion and broader powers, to impose a sentence that would be reasonable under the advisory Guideline regime.

The plain-error in this case, that error, that cannot constitute "harmless error". An error may be harmless only where the Government is able to to prove that none of the defendant's substantial rights have been affected by the error. See, **Fed. R. Crim. P. 52(a); U.S. v. Crosby,**

10

397 F.3d 103 (2nd Cir. 2005).

It is well-settled that courts correct plain-error in those cases affecting substantial rights when the error seriously affects the fairness, integrity and public reputation of judicial proceedings. **United States v. Atkinson**, 297 U.S. 157 (1936).

In the case at bar, Petitioner's substantial rights were seriously affected herein because he was sentenced under the mandatory Guideline régime.

In the case at bar, Petitioner has been in continuous custody and confinement since February 1989, he has been in prison for over 16 years, and still must serve another $9\frac{1}{2}$ more years before he will be released.

Petitioner should be re-sentenced by this court since this court is no longer bound by the pre-**Booker** mandatory Guidelines when this court sentenced Petitioner to a prison term of 30 years. That at re-sentencing, this court would now have the sentencing discretion this court did not have in 1989, when it sentenced Petitioner. That a re-sentencing of Petitioner under the post-**Booker** advisory Guideline regime, this court would not be constrained to impose a "severe" sentence on Petitioner as was required by the pre-**Booker** mandatory Guideline regime.

That at a re-sentencing of Petitioner, this court would not be constrained nor restricted by the Guidelines, because those Guidelines are now advisory. Under the Supreme Court's **Booker** ruling, this court should re-sentence Petitioner, in the absence of the mandatory Sentencing Guidelines.

Respectfully Submitted

Sandz Rafael

11

even to impose a sentence at the level that I have
indicated of $2500.

I must impose special assessments of $50 on
each of the two counts for a total assessment of $100.

Apart from disagreement with the offense, then,
of the larger goals, I guess, of the sentencing
guidelines, Mr. Stawicki, do you have any reason to
indicate that there is a legal objection to the sentence
I've imposed?

MR. STAWICKI:    No, Your Honor.

THE COURT:    All right.    You may be seated, Mr.
Rosario.

Turning to Edwin Sanchez, Mr. Sanchez, the
sentencing guidelines, I think, took into consideration
everything that has been argued effectively by your
counsel.

The Sentencing Commission made a determination,
one that in many ways parallels a larger determination
made by Congress, about the seriousness of this offense
and the danger of those who have been involved in serious
felony offenses within 15 years.  Your counsel has argued
correctly that there -- at least on the record -- appears
to have been a hiatus.  The Sentencing Guidelines and
Sentencing Commission took that into consideration.  They
made the time period 15 years.  And in doing so, they made

the lowest possible guideline without a departure sentence
to be 360 months.  It is a severe sentence.  There's no
question about that.  But I find no basis to depart from
the guidelines that have been outlined by Congress.

Accordingly, in your case, I will impose a
sentence of 360 months, the minimum guideline sentence
available.

With respect to supervised release, I impose a
period of 60 months' supervised release.

With respect to the sentence of fine, I impose
the minimum guideline fine of $20,000.

There is no restitution appropriate here.

The question of special assessment requires
that I impose a total special assessment of $100, with $50
apiece.

Mr. Wheeler, any basis to -- legal basis to
object to the sentence as I have --

MR. WHEELER:    Only what I've already argued to
the Court, Your Honor.

THE COURT:    All right.  Turning then to Rafael
Sanchez -- you may be seated, Mr. Sanchez -- the same
reasons apply to you.  I understand the perhaps surprise
of those who have been involved in the drug trade that
serious sentences are now to be imposed.  Perhaps if
serious sentences had been imposed earlier on, we wouldn't

be here.  But I've not been left with a lot of

discretion.  And such as I have, I'm not about to exercise

for a case that falls within the heartland of what the

Sentencing Commission intended.  They have set in the case

of someone such as you who has committed crimes within 15

years -- despite a hiatus -- a minimum guideline of 360

months.  I feel obligated to impose it in light of the

congressional direction that I have received and that it

would be a manipulation of the guidelines if I were to

depart from them; 60 months of supervised release; $20,000

fine; there is no restitution appropriate here; and the

special assessment is $100.

          Mr. McBride, apart from what has been argued to

me in terms of concepts, are there any legal objections to

that sentence?

          MR. McBRIDE:  None.  I've already --

          THE COURT:  All right.  So, that having been

said, in the case of Mr. Rosario, I impose a sentence of

10 years on count one; 97 months on count two --

          MR. DEMBIN:  Excuse me, Your Honor.  It's the

opposite.

          THE COURT:  I'm sorry.  Ten years on count

two, 97 months on count one to be served concurrently.

I impose a period of supervised release of 60 months.  I

impose a fine of $2500 and there is a total special

assessment of a hundred dollars.

With respect to Edwin Sanchez, I impose a period of imprisonment of 360 months to be served concurrently on counts one and two.  I impose a period of supervised release of 60 months; impose a fine of $20,000; and the total special assessment is $100.

With respect to Rafael Sanchez, I impose a sentence of 360 months' imprisonment on both counts one and two; a period of supervised release of 60 months; a fine of $20,000; and a total special assessment of a hundred dollars.

I believe that I have indicated in my statement that despite the fact that it is likely that there is a difference of 24 months within the guideline range for Edwin Sanchez and Rafael Sanchez, the character and severity of the sentences are such that I feel obligated to impose them at the lowest end of the guideline range. I do that in part because this is not the most severe of career offender cases that the Court can confront nor do I view the defendants as the most significant of career defendants.  Consequently, while I remain within the guidelines, I do not go above the minimum guideline for each of the defendants.

All right.  Now I have before me some questions of release pending appeal.  I have a memorandum from you,